UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ENRIQUE BANUCHI,**

*Plaintiff*,

v.

**EQUIFAX INFORMATION SERVICES, LLC,** *and* **UNIVERSAL CREDIT SERVICES, LLC,**

*Defendants*.

Case No:

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Enrique Banuchi,** ("**Mr. Banuchi**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Equifax Information Services, LLC** ("**Equifax**") and **Universal Credit Services, LLC** ("**Universal**") (jointly, "the **Defendants**"), stating as follows:

### PRELIMINARY STATEMENT

1. This is an action brought by Mr. Banuchi against the Defendants for violations of the **Fair Credit Reporting Act**, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**").

### JURISDICTION AND VENUE

2. Jurisdiction arises under FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331, as the FCRA is a federal statute.

3. The Defendants are subject to the provisions of the FCRA and to the jurisdiction of this Court pursuant to Fla. Stat. § 48.193 and Fed R. Civ P. 4(k).

4. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2), because the acts complained of were committed and / or caused by the Defendant within the Middle District of Florida.

## PARTIES

5. **Mr. Banuchi** is a natural person residing in Orlando, Orange County, Florida.

6. Mr. Banuchi is a *Consumer* as defined by 15 U.S.C. § 1681a(c).

7. **Equifax** is a Georgia corporation, with a primary business address of **1550 Peachtree Street NW, Atlanta, GA 30309**.

8. Equifax is registered to conduct business as a foreign corporation in the State of Florida, where its Registered Agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.**

9. **Universal** is a Pennsylvania limited liability company with a primary business address of **370 Reed Rd., Suite 100, Broomall, PA 19008.**

10. The Defendants are both a *Consumer Reporting Agency* ("**CRA**") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, and/or on a cooperative nonprofit basis, they regularly engage, in whole or in part, in the practice of assembling or evaluating consumer credit information, or other information on consumers, for the purpose of furnishing consumer reports to third parties, and use

means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically the mail and internet.

## FACTUAL ALLEGATIONS

11. On or about January 4, 2022, Mr. Banuchi applied to re-finance his home mortgage with Mortgage Unlimited, LLC ("Mortgage Unlimited"), to take advantage of lower interest rates.

12. As part of the application process, Mortgage Unlimited requested a "tri-merge" credit report from Universal, regarding Mr. Banuchi.

13. Universal, in response to Mortgage Unlimited's request, requested and obtained a consumer report from Equifax, regarding Mr. Banuchi.

14. Universal then merged the credit information it obtained from Equifax with information it obtained from Experian and Trans Union into a single, composite report, referred to as a "tri-merge" report, which it provided to Mortgage Unlimited.

15. Mr. Banuchi has a long and considerable history of positive payments on multiple accounts from multiple creditors.

16. Despite this, Universal reported that Mr. Banuchi had no FICO score based on his Equifax data, specifically due to there being "no recently reported account information. **See Plaintiff's Exhibit A.**

17. This is false, and is contradicted by Universal's own report, which indicates that Mr. Banuchi had a wealth of data reported, including a mortgage

reported by Wells Fargo Bank, indicating 25 months of positive payment history, and last updated less than 30 days prior.

18.  The Universal tri-merge report also indicated a Bank of America credit card with 46 months of positive payment history, and last updated less than 30 days prior.

19.  The Equifax Beacon 5.0 FICO® score requires only a single tradeline with at least 6 months of data reported updated within the last 6 months to produce a FICO® score, a condition Mr. Banuchi met many times over.

20.  Indeed, Mr. Banuchi had at least 11 tradelines reported by Equifax, many of them reported within the last 30 days.

21.  Despite this, Universal produced and sold a consumer report which indicated there was "no recently reported account information."

22.  Further, Universal's report indicated that Mr. Banuchi's name was "Enriqueg G. Banuchi/Rios."

23.  Plaintiff's full name is Enrique Gabriel Banuchi; he has never used any aliases or alternates of this name.

24.  "Enrique Gabriel Banuchi" appears on his driver's license, credit cards, and other forms of identification.

25.  Nonetheless, at some point in the past, Equifax began reporting that Mr. Banuchi's name was "Enriqueg G Banuchi/Rios" (SIC).

26. Despite both Trans Union and Experian accurately identifying him correctly as Enrique Gabriel Banuchi, Universal incorporated the false name from Equifax into the tri-merge report it sold to Mortgage Unlimited.

27. Mr. Banuchi's lender suggested that the mangling of his name might be responsible for no score being returned.

28. As a result of the Defendants' conduct, Mr. Banuchi's application to refinance his home was denied.

29. In addition to this loss of credit, Mr. Banuchi has suffered severe emotional distress and damage to his reputation.

30. Mr. Banuchi has also suffered economic damages in the form of an inability to take advantage of lower interest rates, as, according to Bankrate.com, the average interest rate on a 30-year fixed refinance on January 7, 2022, was 3.35%. The average rate for the same loan, as of this filing, is 4.20%. **See Plaintiff's Exhibit B.**

31. Mr. Banuchi sought to refinance his home with a loan amount of $369,000.00. Over the course of a 30-year fixed rate loan, Mr. Banuchi would have paid around $216,443.85 in interest at 3.35%, compared to $280,610.41 in interest at 4.2%.

32. As a result of the Defendants' conduct, Mr. Banuchi was unable to take advantage of these lower rates, costing him over $60,000.00 in future interest.

## Mr. Banuchi's Dispute to Equifax

33. After the denial of his refinance application, Mr. Banuchi called Equifax and disputed that Equifax had identified him by the proper name.

34. Mr. Banuchi made clear that his legal (and only) name is Enrique Gabriel Banuchi.

35. Equifax was required to make a reasonable investigation into the dispute, pursuant to 15 U.S.C. § 1681i(a)(1)(A).

36. However, Equifax's dispute resolution systems are almost completely automated and often flub what should be very easy-to-correct mistakes in a consumer's credit file.

37. Indeed, Equifax notified Mr. Banuchi a short while later that it had completed its investigation and that "ENRIQUEG G BANUCHI/RIOS" had been deleted from his credit file and replaced with "ENRIQUE G BANUCHI/RIOS." **See Plaintiff's Exhibit C.**

38. Here, Equifax had zero reason to believe Mr. Banuchi *did not know his own name*, and was, somehow, mistaken about what it was, especially when his report contained nearly a dozen tradelines, none of which reported his name as Enrique(g) G Banuchi/Rios.

39. Equifax failed to conduct a reasonable investigation into Mr. Banuchi's dispute, as any reasonable investigation would have determined that it was reporting his name incorrectly, a fact easily verifiable with the Florida Department of Motor Vehicles, the Social Security Administration, or the 10+ creditors furnishing data about Mr. Banuchi to Equifax.

40. Further, when Mr. Banuchi disputed his name, he asked Equifax to provide an updated consumer disclosure, after the correction was made.

41. However, Equifax did not provide a consumer disclosure with its dispute investigation results.

42. Mr. Banuchi then attempted to obtain his Equifax consumer disclosure online from www.annualcreditreport.com.

43. Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Mr. Banuchi's request, Equifax was required to "clearly and accurately" disclose all information in Mr. Banuchi's file at the time of his request, with the limited exception that his Social Security number could be truncated upon request.

44. Instead of providing a consumer disclosure, Equifax's website provided the following typo-laden error message:



**We have experienced an issue processing your request**

We-re sorry, we are unable to process your request at this time. Please contact our Costumer care Team at XXX-XXX-XXXX for additional help completing you request. The Costumer Care team is available between HOOP, DOOP.

**See Plaintiff's Exhibit D.**

45. This "error message" further inflicted emotional distress upon Mr. Banuchi, who had already spent considerable time trying to fix Equifax's obvious errors.

46. The failure to provide accurate and truthful information (or, as in the instant matter, any information at all) as required by law creates an injury-in-fact, thus creating standing pursuant to Article III.

47. Mr. Banuchi has a right to a full and complete disclosure of the contents of his file upon demand, at least once a year and without charge, and that disclosure must be presented clearly and accurately. 15 U.S.C. § 1681j.

48. Equifax's failure to accurately, fully, and clearly disclose the information within its files regarding Mr. Banuchi deprived him of this right.

49. Records show that on or about December 23, 2021, Equifax also sold consumer reports, regarding Mr. Banuchi, to JP Chase Auto Finance, BB&T Dealer Finance, and Capital One Finance.

50. On information and belief, these reports contained the same errors as the report sold by Equifax to Universal Credit Services.

51. Upon information and belief, Equifax sold other reports concerning Mr. Banuchi within the last 24 months; the exact number of reports is unknown to Mr. Banuchi but is well-known to Equifax and contained in its business records.

52. Mr. Banuchi has hired the undersigned law firm to represent him in this matter and has assigned to them his right to obtain reimbursement for his reasonable fees and costs.

### COUNT I
### VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681e(b)
### Equifax Only

53. Mr. Banuchi adopts and incorporates paragraphs 1 – 52 as if fully stated herein.

54. Equifax violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of at least four consumer reports

sold regarding Mr. Banuchi, when it included false, inaccurate as well as out-of-date information in the reports, specifically by indicating that Mr. Banuchi had no recently reported accounts and that his true name was "Enriqueg G. Banuchi/Rios."

55. Equifax's conduct was willful and intentional, or alternately, performed with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

56. Equifax is therefore liable to Mr. Banuchi, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Banuchi' actual damages, or statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, attorneys' fees, and costs.

57. Alternatively, Equifax's conduct was the result of negligence, and Mr. Banuchi is entitled to actual damages pursuant to 15 U.S.C. § 1681o, as well as his attorneys' fees, and costs.

**WHEREFORE,** Mr. Banuchi respectfully requests that this Honorable Court enter judgment against Equifax for:

a. The greater of statutory damages of **$1,000** per incident (for a total of **$4,000**), or Mr. Banuchi's actual damages pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Punitive Damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d. Such other relief that the Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FCRA - 1681g(a)(1)
## Equifax Only

58. Mr. Banuchi adopts and incorporates paragraphs 1 – 52 as if fully stated herein.

59. Equifax violated **15 U.S.C. § 1681g(a)(1)** when responding to Mr. Banuchi's request for his consumer disclosure, by failing provide a consumer disclosure to Mr. Banuchi on at least two separate occasions, with the last attempt resulting in Equifax's automated system telling him to call the "Costumer care" line at "XXX-XXX-XXXX" between the hours of "HOOP, DOOP."

60. Equifax's failure was a willful failure to fulfill its duty to clearly and accurately disclose to Mr. Banuchi all of the information in his file at the time of the request pursuant to 15 U.S.C. § 1681g(a)(1).

61. As a result, Mr. Banuchi is entitled, pursuant to 15 U.S.C. § 1681n, to the greater of his actual damages, or statutory damages up $1,000.00 per violation, plus punitive damages, attorneys' fees, and costs.

62. Alternatively, Equifax's conduct was the result of negligence, and Mr. Banuchi is entitled, pursuant to 15 U.S.C. § 1681o, to an award of his actual damages, attorneys' fees, and costs.

**WHEREFORE,** Mr. Banuchi respectfully requests that the Honorable Court enter judgment against Equifax for:

    a.    The greater of statutory damages of **$1,000** per incident (for a total of **$2,000**), or Mr. Banuchi's actual damages pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

    b.    Punitive Damages pursuant to 15 U.S.C. § 1681n(a)(2);

    c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

    d.    Such other relief that the Court deems just and proper.

## COUNT III
## VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681e(b)
## Universal Only

63.    Mr. Banuchi adopts and incorporates paragraphs 1 – 52 as if fully stated herein.

64.    Universal violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of a consumer report sold to Mortgage Unlimited, when it included false, inaccurate as well as out-of-date information in Mr. Banuchi's credit report, specifically that Mr. Banuchi had no recently reported accounts and that his true name was "Enriqueg G. Banuchi/Rios."

65.    Universal's conduct was willful and intentional, or alternately, acted with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

66. Universal is therefore liable to Mr. Banuchi, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Banuchi' actual damages, or statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, attorneys' fees, and costs.

67. Alternatively, Universal's conduct was the result of negligence, and Mr. Banuchi is entitled to actual damages pursuant to 15 U.S.C. § 1681o, as well as his attorneys' fees, and costs.

**WHEREFORE,** Mr. Simmons respectfully requests that this Honorable Court enter judgment against Universal for:

   a. The greater of statutory damages of **$1,000** per incident (for a total of **$2,000**), or Mr. Banuchi's actual damages pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

   b. Punitive Damages pursuant to 15 U.S.C. § 1681n(a)(2);

   c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

   d. Such other relief that the Court deems just and proper.

**COUNT IV**
**VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)**
**Equifax Only**

68. Mr. Banuchi adopts and incorporates paragraphs 1 – 52 as if fully stated herein.

69. Equifax violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into Mr. Banuchi's dispute, as Equifax unilaterally determined that Mr. Bauchi's name is "Enrique G. Banuchi/Rios," when Mr. Banuchi himself indicated otherwise.

70. Equifax's conduct was willful and intentional, or alternately, done with a reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

71. Equifax is therefore liable to Mr. Banuchi, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Banuchi's actual damages, or statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, attorneys' fees, and costs.

72. Alternatively, Equifax's conduct was the result of negligence, and Mr. Banuchi is entitled, pursuant to 15 U.S.C. § 1681o, to his actual damages, attorneys' fees, and costs.

**WHEREFORE,** Mr. Banuchi respectfully requests that this Honorable Court enter judgment against Equifax for:

a. The greater of statutory damages of **$1,000** per incident, or Mr. Banuchi's actual damages pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Punitive Damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d. Such other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Banuchi demands a jury trial on all issues so triable.

Respectfully submitted on March 23, 2022, by:

        **SERAPH LEGAL, P. A.**

        /s/ *Bryan J. Geiger*
        Bryan J. Geiger, Esq.
        Florida Bar No.: 119168
        BGeiger@seraphlegal.com
        1614 North 19th Street
        Tampa, FL 33605
        Tel: 813-567-1230
        Fax: 855-500-0705
        *Attorneys for Plaintiff*

**ATTACHED EXHIBIT LIST**

A. Universal Tri-Merge Report, January 4, 2022, Excerpt
B. Screenshot of Bankrate.com, accessed March 1, 2022
C. Mr. Banuchi's Equifax Dispute Results, Excerpt
D. Equifax's Error Message to Mr. Banuchi